IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC SANFORD,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C 12-04751 CRB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Eric Sanford appeals the Social Security Commissioner's denial of his request for disability benefits and supplemental security income ("SSI"). See Sanford Mot. (dkt. 21). Defendant Carolyn Colvin, Acting Commissioner of Social Security, cross-moves for summary judgment, see Colvin Mot. (dkt. 22). Finding that the Administrative Law Judge ("ALJ") based her decision on substantial evidence in the record as a whole, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

## I. BACKGROUND

### A. Sanford's Medical History And Application for Benefits

Sanford was diagnosed with SLE in either the late 1970s or early 1980s, id. at 25, and received treatment from his doctor, Dr. Lieberman, for lupus and hypertension approximately

once a year from 1986 through 2006, Colvin Mot. at 2. In 1999, Dr. Lieberman found Sanford capable of a very restricted range of activity. AR at 29. Sanford underwent surgery to address his injuries in 1999 and worked full time at various jobs afterwards. Id.

Sanford filed for disability benefits on July 17, 2008, and for supplemental security income on July 31, 2008, alleging disability beginning January 1, 2008, due to systemic lupus erythematosus ("SRE"). AR at 21. In his application, he claimed to suffer from dizzy spells, migraines, and joint tension as a result of his SLE and stated that he was not able to afford medication or schedule regular doctor visits. AR at 25-26.

As reflected in Sanford's treatment records, Dr. Lieberman consistently reported that Sanford's lupus was stable or in remission and was well-controlled, id. at 233, 236, 311, 317, 319, 321, 322, 325, 327, 438. Sanford's records contain a number of lapses between appointments, however, as well as missed appointments. Id. at 26. For example, in 2008, Sanford did not see Dr. Lieberman until November of that year. Id. At that time, Sanford's blood pressure was elevated and he was given prescriptions for high blood pressure medications. Id.

In October 2008, after applying for disability benefits, Sanford visited Dr. Sanders, a consultative psychologist, for a psychological examination. Id. at 262. Sanford denied any history of psychiatric illness or drug abuse. Id. at 262-63. Sanford told Dr. Sanders that he quit his last job delivering newspapers because he had to attend a family funeral during his scheduled shift. Id. at 263. The examination showed Sanford had no suicidal ideation and no mental impairments. Id. at 265. Dr. Sanders noted that some of Sanford's responses to questions appeared to be inconsistent with his background and work history, including the fact that he was working until the time of the examination. Id. at 27.

On November 15, 2008, Dr. Siekerkotte, a consultative internist, examined Sanford. Id. at 269-74. Sanford reported constant pain and swelling, said he could not drive and had to lie down all day, and claimed to have suicidal thoughts. Id. at 269. Sanford told Dr. Siekerkotte he quit his last job as a newspaper deliveryman because of pain and joint swelling. Id. at 269. Dr. Siekerkotte observed a butterfly rash on Sanford's face and noted

that Sanford had cold sweats and was unable to take his shoes and socks off by himself. Id. at 270. According to the doctor, Sanford's upper extremities looked "rather muscular" and he walked with a normal gait, but was unable to stoop forward and had limited hip motion and muscle spasms in both arms and legs. Id. at 271. Sanford also exhibited decreased grip strength and decreased sensation in his palms. Id. at 272.

Dr. Siekerkotte concluded that Sanford was limited to standing and walking for two hours per day in fifteen-minute increments; limited to sitting for two hours per day in twenty-minute increments; could lift less than ten pounds; and could never climb, balance, stoop, kneel, crouch, or use his arms. Id. Dr. Siekerkotte opined that Sanford put forth full effort during the examination and that his limitations would be present for the next twelve months. Id. at 272-74.

In December 2008, Dr. Kammen, a state agency physician, noted discrepancies in Dr. Siekerkotte's examination. Id. at 287. Specifically, Dr. Kammen observed that Dr. Siekerkotte did not find any joint swelling or deformity, the sensory loss in Sanford's palms did not coincide with the possible effects of lupus, and Sanford's lack of muscle loss was inconsistent with his diminished grip strength. Id. at 287. Due to these inconsistencies, Dr. Kammen concluded that Sanford's physical impairments were not severe and referred the matter to the Cooperative Disability Investigation ("CDI") unit. Id. at 287-88.

In May 2009, CDI Special Agent Durrell Mackey began an investigation and found that Sanford had a criminal history that included possession of marijuana and cocaine, as well as filing a false workers' compensation claim. Id. at 292. Sanford informed Agent Mackey that he was laid off from his last job delivering newspapers. Id. Sanford also represented that he could walk for one hour at a time and rode his bicycle three times per week for one mile at a time. Id. Finally, Sanford revealed to Agent Mackey that he recently applied to work as a truck driver and believed he could work as a medical assistant or phlebotomist if he could sit most of the day. Id. at 293, 295. In June 2009, Dr. Bonner, a state agency physician, reviewed Sanford's records and agreed with Dr. Kammen that the record was insufficient to determine whether Sanford was disabled. Id. at 339.

The Commissioner denied Sanford's application initially on January 16, 2009, and upon reconsideration on June 9, 2009. Id. Sanford filed a timely written request for a hearing, and ALJ Regina L. Sleater heard the appeal on July 11, 2010. Id. Sanford was represented, and an impartial Vocational Expert testified. Id.

On May 13, 2010, Dr. Lieberman provided a statement of Sanford's treating history Sanford suffers from hypertension, chronic mechanical low back pain, and chronic headaches, and is unable to afford regular follow-up and proper medication. Id. at 341, 347. On May 20, 2010, Dr. Lieberman provided a medical source statement reflecting his assessment that Sanford could lift up to ten pounds, could stand less than two hours and sit less than two hours in an eight-hour workday, was limited in pushing, reaching, and pulling, and had substantial postural limitations. Id. at 342-44.

At the hearing, Sanford testified that he quit work in January 2008 due to joint pain, suffered from lupus flare-ups at least once per week, and rode his bicycle as often as every day. Id. at 39, 42, 46. He also represented that he had never used cocaine or marijuana. Id. at 38.

**B.    The ALJ's Decision**

In a written decision dated August 27, 2010, the ALJ found Sanford not disabled. Id. At step one, the ALJ determined Sanford had not engaged in substantial gainful activity ('SGA") at any time since the date of his application. Id. at 23. At step two, the ALJ found that Sanford suffers from SLE and high blood pressure. Id. at 24. The ALJ concluded, however, that Sanford's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. Id. Because the record was riddled with inconsistencies, exaggeration, and untruthful or conflicting statements, the ALJ concluded that Sanford's credibility was "poor." Id. at 29. With respect to the medical opinion evidence, the ALJ gave the greatest weight to Dr. Sanders, the consultative psychologist, and Drs. Kammen and Bonner, the state agency physicians, and very little or no weight to the opinions of Dr. Siekerkotte, the consultative internist, and Dr. Lieberman, Sanford's treating physician. Id. at 29.

The ALJ concluded that Sanford's impairments were not severe because they did not significantly limit, or were not expected to significantly limit, his ability to perform basic work-related activities for twelve consecutive months. Id. at 24. Finding that Sanford was not disabled within the meaning of the Social Security Act, the ALJ denied his application. Id. at 30.[1] The Appeals Court denied Sanford's request for review on July 5, 2012, making the ALJ's decision the final decision of the Commissioner. Id. at 1.

Sanford filed the present action on September 5, 2012, alleging that the Commissioner's actions, findings, and conclusions were not supported by substantial evidence. Compl. (dkt. 1) ¶ 9. Sanford urges the Court to vacate the Commissioner's final decision and remand for payment of benefits, or for rehearing. Sanford Mot. at 2.

## II. LEGAL STANDARD

### A. Standard For Determining Disability

A person is "disabled" for purposes of receiving disability benefits and SSI if he or she is unable to engage in SGA due to a physical or mental impairment that has lasted for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner is governed by a five-step sequential process when determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4).[2] At step one, the Commissioner evaluates whether the claimant has engaged in SGA since filing for benefits. § 404.1520(a)(4)(i). At step two, if the claimant has not engaged in SGA, the Commissioner determines whether the alleged impairment is sufficiently severe to limit the claimant's ability to do basic work activities. § 404.1520(a)(4)(ii). Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, and lifting. §§ 404.1521, 416.921.

---

[1] The ALJ deemed it unnecessary to address steps three through five. AR at 30.

[2] All citations to the Code of Federal Regulations are from Title 20.

In steps one and two, which are at issue in this case, the burden is on the claimant to demonstrate a severe impairment and the inability to perform past work. Id. The claimant must provide medical evidence proving the impairment; the claimant's own statement of symptoms alone will not suffice. §§ 404.1508, 416.908.

### B.  Judicial Review Of Commissioner's Final Decision

The district court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)); see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). The court must consider the record as a whole, including both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Frost v. Barnhart, 314 F.3d 359, 367 (9th Cir. 2002) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)).

The court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." Frost, 341 F.3d at 367. However, if substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the Commissioner's finding is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, and may be set aside only if an improper legal standard was applied in weighing the evidence. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

### 1.  Relative Weight of Medical Opinions

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat

the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to a treating physician's opinion as to the nature and severity of a claimant's impairment(s). § 416.927(c)(2); see Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). Nevertheless, a treating physician's opinion is only regarded as controlling where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 416.927(c)(2). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor's, the Commissioner may not reject the treating doctor's opinion without providing "specific and legitimate" reasons supported by substantial evidence in the record. Chaudhry v. Astrue, 688 F.3d at 671.

The opinion of an examining physician, in turn, is entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010); see also Pitzer, 908 F.2d at 506. Even if controverted by another doctor, the opinion of an examining physician may only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record. Turner, 613 F.3d at 1222; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

An ALJ is reasonably expected to give more weight to medical opinions that are consistent with the record. See § 416.927(d)(4).

### 2. Credibility Determinations

"[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). When weighing a claimant's credibility, the ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation

7

for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012) (quoting Tommasetti, 533 F.3d at 1039). "If the ALJ's [credibility] finding is supported by substantial evidence, the court may not engage in second-guessing." Id.

## III. DISCUSSION

Sanford asserts that the Commissioner's decision denying benefits should be vacated and remanded because the ALJ improperly discounted the opinions of Dr. Lierberman, his treating physician, and Dr. Siekerkotte, his consultative internist, without substantial evidence. See Sanford Mot. at 7. The Commissioner responds that the ALJ's decision denying benefits was properly supported by substantial evidence and should therefore be upheld. See generally Colvin Mot. The Court addresses Sanford's argument as to each physician in turn.

Sanford contends that the ALJ did not properly credit the medical opinions of his treating physician of twenty years, Dr. Lieberman, or his consultative examining physician, Dr. Siekerkotte. Sanford Mot. at 7-9. The Court finds that the ALJ provided "specific and legitimate" reasons supported by substantial evidence in the record for rejecting these treating and examining source opinions. Specifically, the opinions of Drs. Lieberman and Siekerkotte were contradicted by consultative examining psychologist, Dr. Sanders, and nonexamining state agency physicians, Drs. Kammen and Bonner, neither of whom found Sanford's physical impairments to be severe. AR at 29.

### A. The ALJ's Rejection Of The Treating Physician's Opinion Was Supported by Substantial Evidence

The ALJ provided "specific and legitimate" reasons for discounting Dr. Lieberman's opinion about Sanford's restricted range of activity. Dr. Lieberman's treatment notes did not support his assessment of Sanford as capable of only a very restricted range of activity. AR at 29. The records indicated that he saw Sanford approximately once a year from 1986

1  through 2006, during which time he treated Sanford for SLE and hypertension. Colvin Mot.
2  at 2. However, the records showed no abnormal findings or significant problems; contained
3  little, if any, discussion of pain or chronic headaches; and reported that Sanford's lupus was
4  stable. AR at 29. The inconsistency between Dr. Lieberman's treatment notes and his
5  opinion that Sanford would be significantly limited at work provided a legitimate reason for
6  the ALJ to reject Dr. Lieberman's opinion. See Batson v. Comm'r of Soc. Sec. Admin., 359
7  F.3d 1190, 1195 n.3 (9th Cir. 2004) (holding that the ALJ properly rejected the treating
8  source's opinion because his "treatment notes do not provide objective medical evidence of
9  the limitations asserted in his report").

10      Moreover, the ALJ concluded that Dr. Lieberman's opinion was inconsistent with the
11 record as a whole. All available evidence indicated that Sanford's injuries were satisfactorily
12 addressed with surgery in 1999. AR at 29. In fact, Sanford worked full-time at various jobs
13 after 1999 and was medically cleared for work in 2006. Id. While Sanford alleged onset in
14 January 2008, he did not see Dr. Lieberman at all that month, and Sanford took no
15 medications other than aspirin for his high blood pressure. Id. at 26. Dr. Lieberman
16 suggested that Sanford could not afford medication or more frequent checkups because he
17 did not have a job, but even when working Sanford did not regularly visit Dr. Lieberman or
18 take medication. Id. at 26. Dr. Lieberman believed Sanford to be capable of only a very
19 restricted range of activity, yet Sanford admitted to CDI Special Agent Mackey in May 2009
20 that he rode a bicycle three times per week for one mile at a time and that he could walk for
21 one hour at a time. Id. at 28. Additionally, state agency physicians, Drs. Kammen and
22 Bonner, found that Sanford's physical impairments were not severe. Id. at 29. It was not
23 unreasonable for the ALJ to discount Dr. Lieberman's opinion in light of the other medical
24 evidence, or to discount the parts of the opinion that were inconsistent with the record. See
25 Andrews, 53 F.3d at 1041; see also Magallanes, 881 F.2d 747, 753 (9th Cir. 1989).

26      Sanford asserts that his credibility and efforts to pursue a non-aggressive treatment
27 plan should have no bearing on Dr. Lieberman's opinion. Sanford Mot. at 9-10. First, the
28 Ninth Circuit has held that evidence of conservative treatment is sufficient to discount a

9

claimant's testimony regarding severity of an impairment. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the minimal, conservative treatment that she received") (internal quotation marks omitted). Further, "[i]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." Chaudhry, 688 F.3d at 671 (quoting Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007)).

Second, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)). Here, the ALJ pointed to "specific, clear, and convincing" reasons for concluding that Sanford's credibility was poor. See Tommasetti, 533 F.3d at 1039; Thomas, 278 F.3d at 959.

Sanford, who worked part-time at two different jobs after his alleged onset date, AR at 27, reported three different reasons for leaving his job delivering newspapers: He informed (1) Dr. Sanders, a consultative psychologist, that he quit to attend a funeral, id. at 263; (2) Dr. Siekerotte, a consultative internist, that he quit due to pain and joint swelling, id. at 269, and (3) Special Agent Mackey that he was laid off, id. at 292. In May 2009, Sanford also told Special Agent Mackey that he could walk unassisted for up to one hour a day, rode his bike three times a week for one mile at a time, and believed he could return to work as a medical assistant or phlebotomist. Id. At a psychological examination with Dr. Sanders, Sanford "may have attempted" to portray false limitations inconsistent with his background and work history. Id. at 27. And although Sanford never indicated to Dr. Sanders that he had suicidal thoughts, he claimed to have them just one month later. Finally, the CDI noted that Sanford had a criminal history of possession of marijuana and cocaine—contrary to his testimony that he never used drugs— as well as a history of filing false workers' compensation claims. Id. at 28.

A review of Dr. Lieberman's records reveals that they largely reflect Sanford's self-reports and directly contradict other evidence in the record. Thus, the ALJ's adverse credibility determination supports her rejection of Dr. Lieberman's opinion, which was primarily based on Sanford's subjective comments concerning his condition. See, e.g., Vargas v. Apfel, 211 F.3d 1276 (9th Cir. 2000) (finding that the ALJ provided specific reasons for discrediting claimant's subjective symptom evidence when stating that claimant "only infrequently sought medical treatment for these symptoms, he received only minimal, conservative treatment for the pain, such as non-prescription-strength Tylenol, and he was able to walk and ride on his exercise bike regularly.").

In sum, the ALJ provided specific and legitimate reasons for rejecting Dr. Lieberman's opinion based on substantial evidence in the record. See Magallanes, 881 F.2d at 753.

### B. The ALJ's Rejection Of The Consultative Examiner's Opinion Was Supported By Substantial Evidence

The ALJ also provided "specific and legitimate" reasons for discounting Dr. Siekerkotte's opinion that Sanford had a restricted residual functional capacity. The Ninth Circuit has upheld the Commissioner's decision to reject the opinion of a treating or examining physician based in part on the testimony of a nonexamining medical advisor. See Andrews, 53 F.3d at 1042-43 (upholding the ALJ's rejection of an examining psychologist's opinion where there was legitimate conflicting testimony between the examining psychologist and the nonexamining medical expert, and the ALJ pointed to "specific, legitimate reasons" in the record for doing so.); see also, e.g., Lester, 81 F.3d at 831; Magallanes, 881 F.2d at 751-55; Roberts v. Shalala, 66 F.3d 179 (9th Cir. 1995).

Here, the ALJ found discrepancies in Dr. Siekerkotte's examination report that were not adequately explained and drew objections from state agency medical consultants. AR at 29. Although Sanford told Dr. Siekerkotte he had daily pain and swelling, he did not take any medications other than aspirin for his high blood pressure. Id. at 27. Sanford alleged he could not take off his shoes and socks at the examination, yet he appeared "rather muscular"

1   and told Agent Mackey that he rode his bike three times a week. Id. at 28. Sanford also
2   complained of hip pain, yet walked normally, and complained of suicidal thoughts, even
3   though he had not reported any to the psychologist just one month earlier. Id. at 27.
4   Although Dr. Siekerkotte concluded Sanford could walk and sit for only fifteen minutes at a
5   time, Sanford's statements to Agent Mackey, including that he believed he could work as a
6   medical assistant or phlebotomist, contradicted this opinion. Id. at 28.

7   Sanford argues that, in discounting Dr. Siekerkotte's opinion, the ALJ failed to take
8   into consideration the fact that Dr. Siekerkotte viewed him during a lupus flare-up. Sanford
9   Mot. at 8. The record does not contain medical support for this argument, however. Sanford
10  and the Commissioner disagree whether, and to what extent, the butterfly rash on Sanford's
11  face at the time of his examination indicated a flare-up.[3] Id. Because "the ALJ is the final
12  arbiter with respect to resolving ambiguities in the medical evidence," Tommasetti, 533 F.3d
13  at 1041-42, and may reject a medical opinion by giving specific, legitimate reasons based on
14  substantial evidence, Andrews, 53 F.3d at 1043, Sanford's argument that the ALJ improperly
15  discounted Dr. Siekerkotte's opinion lacks merit.

16  Additionally, Sanford argues Dr. Siekerkotte's opinion was bolstered by an
17  addendum stating her belief that Sanford's pain was genuine. Nevertheless, where "the ALJ's
18  [credibility] finding is supported by substantial evidence, the court may not engage in
19  second-guessing." Chaudhry, 688 F.3d at 672 ) (quoting Tommasetti, 533 F.3d at 1039).

20  In sum, the Commissioner's final decision in this case —that Sanford's alleged
21  impairment did not limit his ability to perform basic work-related activities and was thus not
22  sufficiently severe—was based on substantial evidence of the record as a whole. See
23  Tackett, 180 F.3d at 1097. Consequently, this Court may set aside the denial of benefits only
24  if the Commissioner's decision was based on legal error. See Thomas, 278 F.3d at 954. The

---

[3] The Commissioner argues that a butterfly rash is merely a sign of lupus, see Colvin's Mot. at 7, while Sanford contends that the rash is a sign of a flare-up ("The first sign of a flare is often the . . . 'butterfly' rash . . ."), see Sanford Reply (dkt. 23) at 4.

Court finds no such legal error. The ALJ provided "specific and legitimate" reasons supported by substantial evidence for discounting the opinions of Drs. Lieberman and Siekerkotte. See Magallanes, 881 F.2d at 753.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Sanford's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 15, 2013 _____

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE